Evan J. Smith
BRODSKY SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT G. CLASBY,<br><br>               Plaintiff,<br><br>     vs.<br><br>INOVALON HOLDINGS, INC., KEITH R. DUNLEAVY, DENISE K. FLETCHER, WILLIAM D. GREEN, ISAAC S. KOHANE, MARK A. PULIDO, LEE D. ROBERTS, and WILLIAM J. TEUBER.<br><br>               Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Robert G. Clasby ("Plaintiff"), by and through his attorneys, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.       Plaintiff brings this stockholder action against Inovalon Holdings, Inc. ("Inovalon" or the "Company"), the Company's Board of Directors (the "Board" or the "Individual Defendants,"), and collectively with Inovalon, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of the Individual Defendants' efforts to sell the Company to Ocala Bidco, Inc. ("Parent"),

through Ocala Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "Nordic Capital") as a result of an unfair process and to enjoin an upcoming stockholder vote on a proposed all cash transaction acquiring all of the Company's remaining outstanding shares, valued at approximately $7.3 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 19, 2021 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Parent, a company which is controlled by Nordic Capital, will acquire all of the remaining outstanding shares of Inovalon's common stock at a price of $41.00 per share in cash. As a result, Inovalon will become an indirect wholly-owned subsidiary of Nordic Capital.

3.      Thereafter, on September 17, 2021, Inovalon filed a Preliminary Proxy Statement on Form PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on September 17, 2021 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether

COMPLAINT

to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Inovalon, provided by Inovalon to the Board's financial advisors J.P. Morgan Securities LLC ("J.P. Morgan") and Evercore LLC ("Evercore"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by J.P. Morgan and/or Evercore, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Tennessee and, at all times relevant hereto, has been a Inovalon stockholder.

8.      Defendant Inovalon is a leading provider of cloud-based platforms empowering data-driven healthcare. Inovalon is incorporated in Delaware and has its principal place of business at 4321 Collington Road, Bowie, MD 20716. Shares of Inovalon common stock are traded on the Nasdaq Stock Exchange under the symbol "INOV."

9.      Defendant Keith R. Dunleavy ("Dunleavy") has been a Director of the Company at all relevant times. In addition, Dunleavy serves as the Company's Chief Executive Officer ("CEO") and Chairman of the Company Board.

10.      Defendant Denise K. Fletcher ("Fletcher") has been a director of the Company at all relevant times.

11.      Defendant William D. Green ("Green") has been a director of the Company at all relevant times.

COMPLAINT

12.     Defendant Isaac S. Kohane ("Kohane") has been a director of the Company at all relevant times.

13.     Defendant Mark A. Pulido ("Pulido") has been a director of the Company at all relevant times.

14.     Defendant Lee D. Roberts ("Roberts") has been a director of the Company at all relevant times.

15.     Defendant William J. Teuber ("Teuber") has been a director of the Company at all relevant times.

16.     The defendants identified in paragraphs 9 through 15 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

17.     Non-Defendant Nordic Capital is a leading private equity investor with a resolute commitment to creating stronger, sustainable businesses through operational improvement and transformative growth. Nordic Capital has its headquarters in Stockholm, Sweden and was founded in 1989.

18.     Non-Defendant Merger Sub is a wholly owned subsidiary of Nordic Capital created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

20.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this

COMPLAINT

District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

22.     Inovalon provides cloud-based platforms for data-driven healthcare. It operates Inovalon ONE Platform, an integrated, real-time cloud native platform that interconnect with the healthcare ecosystem to aggregate and analyze data in real-time, as well as empowers the application in resulting insights. The Company also operates myABILITY software platform, an integrated set of cloud-based applications for providers that offers connectivity, administrative, clinical and quality analysis, management, and performance improvement capabilities to acute, post-acute, and ambulatory point-of-care provider facilities. In addition, it offers advisory, implementation, and support services. The Company serves health plans and provider organizations, as well as pharmaceutical, medical device, and diagnostics companies. Its platforms include information of data pertaining to approximately one million physicians; 574,000 clinical facilities; and approximately 332 million individuals and 61 billion medical events. Inovalon was founded in 1998 and is headquartered in Bowie, Maryland.

23.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated impressive financial results.  For example, in the

COMPLAINT

July 28, 2021 Press Release announcing its 2021 Q2 financial results, the Company highlighted revenue of $190.4 million, up 17% YoY and 8% sequentially, subscription-based platform revenue of $168.7 million, up 19% YoY and 7% sequentially, equating to 89% of Q2 total revenue, and Adjusted EBITDA of $64.1 million, up 13% YoY and 9% sequentially, resulting in adjusted EBITDA margin of 33.7%.

24.     Defendant CEO Dunleavy commented on the results in the Press Release, "'Strength in market demand, sales, implementations, and execution continued to drive top-line growth acceleration during the second quarter, resulting in revenue again exceeding the top end of our original guidance, and our raising revenue growth guidance for the full year 2021. Additionally positive, the second quarter's strength was broad based, resulting not only in strong financial performance, but also in deepening customer relationships, increasing contract durations, contract expansions, increasing renewal performance, and significant strength in the Company's sales opportunity pipelines – all continuing to drive our significant ongoing enthusiasm for 2021 and beyond.'"

25.     Despite this successful year and positive outlook, the Individual Defendants have caused Inovalon to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

26.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

27.     Notably, the Preliminary Proxy Statement also indicates that the Company engaged two separate financial advisors for services relating to the sales process leading to the Proposed Transaction, namely, J.P. Morgan and Evercore. However, the Preliminary Proxy Statement fails to adequately explain why the engagement of two advisors was necessary, especially given that they will

receive $42 million and $3 million for services rendered in connection with the Proposed Transaction, respectively.

28.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Nordic Capital, whether this agreement differed from any other agreement with potentially interested third parties, including those not specifically mentioned by the Preliminary Proxy Statement, and if so in what way, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

29.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

30.     On August 19, 2021, Inovalon issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **BOWIE, Md. – August 19, 2021** – Inovalon (Nasdaq: INOV), a leading provider of cloud-based platforms empowering data-driven healthcare, today announced that it has entered into a definitive agreement to be acquired by an equity consortium led by Nordic Capital, and joined by Insight Partners, as lead co-investor, 22C Capital, and Inovalon founder and Chief Executive Officer Keith Dunleavy, M.D. and certain Class B stockholders of Inovalon in an all-cash transaction with an enterprise value of approximately $7.3 billion.
>
> Under the terms of the agreement, Inovalon stockholders will receive $41.00 per share in cash for each share of Class A Common Stock or Class B Common Stock, representing a 25.3% premium over the closing price of Inovalon Class A Common Stock on July 26, 2021, the last unaffected trading day prior to media speculation regarding a potential transaction, and a 24.4% premium over the volume-weighted average price of the Company's shares over the 30 trading days leading up to the unaffected trading day.
>
> The independent members of the Inovalon Board of Directors, acting on the unanimous recommendation of a special committee of independent directors that led the consideration of alternatives and the negotiation of the terms of the transaction, unanimously approved the agreement, which is subject to a number of customary conditions, including a vote of each of the Class A and Class B stockholders voting separately. In addition, the transaction is subject to approval by a majority of the voting

COMPLAINT

power of the Class A and Class B stockholders voting together as a single class, excluding Dr. Dunleavy, certain other Class B stockholders who are providing equity capital for the transaction and their affiliates. Dr. Dunleavy was not a member of the Special Committee and recused himself from all relevant Board discussions and from the Board vote regarding the transaction.

Upon completion of the transaction, Inovalon will become a private company with greater flexibility to focus on strategies that drive innovation and global market development. Keith Dunleavy, M.D., will continue to be a substantial shareholder in the Company, serve on the Board of Directors, lead Inovalon as CEO, and the Company will maintain its headquarters in Bowie, Maryland.

"The Inovalon Board regularly evaluates opportunities to enhance stockholder value. Today's announcement is the culmination of a thorough process of evaluating strategic alternatives and represents a compelling opportunity to deliver immediate and more certain cash value to stockholders at a significant premium," said William J. Teuber, Jr., Lead Independent Director of the Board and chair of the Special Committee. "During our evaluation it became clear that not only is the consortium led by Nordic Capital offering our shareholders compelling value, they also have a deep appreciation for Inovalon's cloud-based platforms and data capabilities, as well as an appreciation for the people, mission, and the value impact of the Company."

"For more than two decades, Inovalon has developed technologies that enable the connectivity, aggregation, and analysis of healthcare data to empower better clinical outcomes and economics across the healthcare ecosystem," said Keith Dunleavy, M.D., Inovalon's founder, chief executive officer, and chairman of the board. "We are excited to enter the next chapter in Inovalon's journey together with such great partners as Nordic Capital, Insight Partners, and 22C Capital. Their significant experience in the areas of software, data, and healthcare is key. This, together with their longer-term focus, operational experience, and international perspective, is an exciting combination for what we see in front of us. We look forward to continuing our mission, together with our greatly appreciated customers, to empower data-driven healthcare."

"As a leading healthcare and technology investor, Nordic Capital has long admired Inovalon's leadership across the healthcare ecosystem and its cloud-based tools leveraging advanced data analytics to meaningfully empower its customers and the patients they serve," said Fredrik Näslund, Partner, Nordic Capital Advisors. "As data-driven insights become even more important in improving healthcare, Nordic Capital and its co-investors are committed to supporting Inovalon in continuing to deliver high-value solutions to customers and look forward to partnering with Keith and the Inovalon team in this next phase of the Company's growth journey."

"At Insight Partners, we work with healthcare IT leaders who define and grow their markets through world-class software data and innovation," said Deven Parekh, Managing Director at Insight Partners. "We are excited to support Inovalon, a market

leader with a long history of serving customers with powerful data technology as they continue to transform the healthcare ecosystem."

Approvals and Timing

The Inovalon Board of Directors formed a Special Committee composed entirely of independent and disinterested directors to conduct a thorough review of strategic alternatives. The Special Committee led negotiations with the assistance of independent financial and legal advisors. Following the Special Committee's unanimous recommendation, the independent members of the Inovalon Board unanimously approved the merger agreement with an entity established by the equity consortium led by Nordic Capital and co-led by Insight Partners, and recommend that Inovalon stockholders adopt and approve the merger agreement and the transaction.

The transaction is expected to close in late 2021 or early 2022, subject to the satisfaction of customary closing conditions, including the stockholder approvals described above and the receipt of U.S. antitrust approval. The transaction is not subject to a financing condition.

*Potential Conflicts of Interest*

31.     The breakdown of the benefits of the deal indicate that Inovalon insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Inovalon.

32.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Preliminary Proxy Statement provides the following, it fails to disclose an accounting of how much merger consideration the below holdings will be exchanged for upon the consummation of the Proposed Transaction.

| Name of Beneficial Owner | Class A | | Class B | | % of Total Voting Power[1] |
| --- | --- | --- | --- | --- | --- |
| | Shares | % | Shares | % | |
| Keith R. Dunleavy, M.D. | 660,000[2] | * | 54,947,255[3] | 70.4 | 64.0 |
| Robert A. Wychulis[4] | 290,374 | * | 61,569[4] | — | * |
| Jonathan R. Boldt | 265,114 | * | — | — | * |
| Jason B. Capitel | 472,994 | * | — | — | * |
| Peter De Bock | 171,001 | * | — | — | * |
| Denise K. Fletcher | 57,412 | * | 46,260[4] | * | * |

COMPLAINT

| | | | | | |
|---|---|---|---|---|---|
| William D. Green | 116,204 | * | — | — | * |
| Isaac S. Kohane, M.D., Ph.D. | 34,126 | * | — | — | * |
| Mark A. Pulido | 263,925 | * | — | — | * |
| Lee D. Roberts | 140,532 | * | — | — | * |
| William J. Teuber, Jr. | 153,412 | * | 30,715[5] | * | * |
| **All executive officers and directors as a group (12 persons)** | 2,967,014 | 3.8 | 74,612,355 | 95.6 | 87.1 |
| **5% Stockholders** | | | | | |
| Meritas Group, Inc. | — | — | 47,476,820[3] | 60.8 | 55.3 |
| André S. Hoffmann[6] | 341,920 | 0.4 | 19,526,556[6] | 25.0 | 22.8 |
| Vanguard Group, Inc. | 7,392,970[7] | 9.4 | — | — | * |
| BlackRock, Inc. | 6,388,696[8] | 8.2 | — | — | * |
| Black Creek Investment Management | 3,842,578[9] | 4.9 | — | — | * |
| Meritas Holdings, LLC | — | — | 7,470,435[3] | 9.6 | 8.7 |

33.    Moreover, upon the consummation of the Proposed Transaction, the Preliminary Proxy Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Name of Named Executive Officer | Numbers of Shares Subject to | | | |
|---|---|---|---|---|
| | Vested Stock Options (#) | Unvested Stock Options (#) | Estimated Value of Vested Stock Options($) | Estimated Value of Unvested Stock Options ($) |
| Keith R. Dunleavy, M.D | 0 | 0 | $ 0 | $ 0 |
| Robert A. Wychulis | 61,569 | 0 | $ 2,524,329 | $ 0 |
| Eron Kelly | 0 | 0 | $ 0 | $ 0 |
| Jonathan R. Boldt | 0 | 0 | $ 0 | $ 0 |
| Jason B. Capitel | 0 | 0 | $ 0 | $ 0 |
| Peter De Bock | 0 | 0 | $ 0 | $ 0 |

| Name of Board Member | Number of Shares Subject to Unvested Company RSU Awards (#) | Estimated Value of Unvested Company RSU Awards ($) |
|---|---|---|
| Keith R. Dunleavy, M.D. | 0 | $ 0 |
| Denise K. Fletcher | 2,305 | $ 94,505 |
| William D. Green | 2,305 | $ 94,505 |
| Isaac S. Kohane | 2,305 | $ 94,505 |
| Mark A. Pulido | 2,305 | $ 94,505 |
| Lee D. Roberts | 2,305 | $ 94,505 |
| William J. Teuber, Jr. | 3,024 | $ 123,984 |

| Name of Named Executive Officer | Cash-Out Company RS Awards (#) | Estimated Value of Cash-Out Company RS Awards ($) | Conversion Company RS Awards (#) | Estimated Value of Conversion Company RS Awards ($) |
|---|---|---|---|---|
| Keith R. Dunleavy, M.D. | 0 | $ 0 | 0 | $ 0 |
| Robert A. Wychulis | 76,986 | $ 3,156,426 | 179,609 | $ 7,363,969 |
| Eron Kelly | 71,345 | $ 2,925,145 | 166,470 | $ 6,825,270 |
| Jonathan R. Boldt | 118,309 | $ 4,850,669 | 276,007 | $ 11,316,287 |
| Jason B. Capitel | 162,467 | $ 6,661,147 | 379,070 | $ 15,541,870 |
| Peter De Bock | 38,069 | $ 1,560,829 | 88,819 | $ 3,641,579 |

COMPLAINT

34.     In addition, certain employment agreements with certain Inovalon executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff:

| Name of Named Executive Officer | Cash ($)[1] | | Equity ($)[2] | | Perquisites/ Benefits ($) | | Tax Reimbursement ($) | | Other ($) | | Total ($) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Keith R. Dunleavy, M.D | $ | 0 | $ | 0 | $ | 0 | $ | 0 | $ | 0 | $ | 0 |
| Robert A. Wychulis | $ | 0 | $ | 3,156,426 | $ | 0 | $ | 0 | $ | 0 | $ | 3,156,426 |
| Eron Kelly | $ | 0 | $ | 2,925,145 | $ | 0 | $ | 0 | $ | 0 | $ | 2,925,145 |
| Jonathan R. Boldt | $ | 0 | $ | 4,850,095 | $ | 0 | $ | 0 | $ | 0 | $ | 4,850,095 |
| Jason B. Capitel | $ | 0 | $ | 6,660,901 | $ | 0 | $ | 0 | $ | 0 | $ | 6,660,901 |
| Peter De Bock | $ | 0 | $ | 1,560,706 | $ | 0 | $ | 0 | $ | 0 | $ | 1,560,706 |

35.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     Thus, while the Proposed Transaction is not in the best interests of Inovalon, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

37.     On September 17, 2021, the Inovalon Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

      a. Sufficient information as to why the Company engaged two separate financial advisors for services relating to the sales process leading to the Proposed Transaction;

      b. Whether the confidentiality agreements entered into by the Company with Nordic Capital differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties if any, and if so, in what way;

      c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Nordic Capital, would fall away;

      d. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders

*Omissions and/or Material Misrepresentations Concerning Inovalon's Financial Projections*

39.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for Inovalon provided by Inovalon management and relied upon by J.P. Morgan

and Evercore in their analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading

40.     The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Inovalon management provided to the J.P. Morgan and Evercore. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

41.     With regard to the Inovalon Projections prepared by Inovalon management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a. Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: net income or loss calculated in accordance with GAAP, depreciation and amortization, interest income, interest expense, other expense, net, provision for income taxes, stock-based compensation, acquisition costs, restructuring expense, tax on equity exercises, and other non-comparable items;

b. EBIT, including all underlying necessary inputs and assumptions, including specifically: net income or loss calculated in accordance with GAAP, interest income, interest expense, other expense, net, provision for income taxes, stock-based compensation, acquisition costs, restructuring expense, tax on equity exercises, and other non-comparable items; and

c. Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: stock-based compensation, taxes, capital expenditures, and changes in net working capital (including the specific metrics of difference between current assets and current liabilities).

42.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

43.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

44.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of J.P. Morgan or Evercore's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P. Morgan*

45.     In the Preliminary Proxy Statement, J.P. Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

46.     With respect to the *Public Trading Multiples* Analysis, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific metrics for each selected company; and

    b.  The specific inputs and assumption used to determine the selected Adjusted EBITDA multiple reference range of 18.5x – 24.0x.

47.     With respect to the *Selected Transaction Multiple Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific metrics for each selected transaction;

    b.  The specific inputs and assumption used to determine the selected FV/NTM Revenue Multiple reference range for the Company of 7.0x to 11.0x;

    c.  The specific date on which each selected transaction closed; and

- 14 -

d.  The value of each selected transaction.

48.  With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a.  The specific terminal values for the Company utilized in the analysis;

b.  The specific inputs and assumptions used to determine the utilized perpetual growth rate range of 3.0% to 4.0%;

c.  The specific inputs and assumptions used to determine the utilized discount rate range of 8.00% to 9.00%;

d.  Inovalon's weighted average cost of capital;

e.  Inovalon's net debt as of August 3, 2021; and

f.  The specific "other adjustments for the Company" referenced.

49.  These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

50.  Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Inovalon stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Evercore*

51.  In the Preliminary Proxy Statement, Evercore describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

COMPLAINT

52.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific terminal values for the Company utilized in the analysis;

    b.   The specific inputs and assumptions used to determine the utilized perpetual growth rate range of 3.00% to 4.00%;

    c.   The specific inputs and assumptions used to determine the utilized discount rate range of 8.00% to 9.00%;

    d.   Inovalon's weighted average cost of capital;

    e.   Inovalon's net debt as of August 3, 2021; and

    f.   The number of fully diluted shares of Company common stock as of August 3, 2021.

53.     With respect to the *Selected Public Company Trading Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific metrics for each selected company; and

    b.   The specific inputs and assumption used to determine the utilized selected multiple reference ranges for the following metrics:

        i.   2021E Adjusted EBITDA Multiple Range: 22.0x – 28.0x;

        ii.   2022E Adjusted EBITDA Multiple Range: 19.0 – 25.0x;

        iii.   2021E Revenue Multiple Range: 7.0 – 10.0x; and

        iv.   2022E Revenue Multiple Range: 6.0 – 9.0x.

54.     With respect to the *Selected Transaction Multiple Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific metrics for each selected transaction;

    b.   The specific inputs and assumption used to determine the selected LTM Revenue Multiple Range: 7.0x – 11.0x;

    c.   The specific inputs and assumption used to determine the selected NTM Revenue Multiple Range: 6.0x – 10.0x;

     d.   The specific date on which each selected transaction closed; and

     e.   The value of each selected transaction.

55.     With respect to the *Equity Research Analyst Price Targets* Analysis, the Preliminary Proxy Statement fails to disclose the following:

     a.   The specific price targets analyzed; and

     b.   The specific identity of the equity research analysts who generated the analyzed price targets.

56.     With respect to the *Premiums Paid Analysis*, the Preliminary Proxy Statement fails to disclose the following:

     a.   The specific premiums for the 21 selected transactions analyzed; and

     b.   The specific inputs and assumptions used to determine the applied premium range of 20% to 35%.

57.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

58.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Inovalon stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

59.     Plaintiff repeats all previous allegations as if set forth in full herein.

60.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

61.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

62.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

63.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

64.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

- 18 -

COMPLAINT

65.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

66.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

67.     Plaintiff repeats all previous allegations as if set forth in full herein.

68.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The

COMPLAINT

Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Inovalon's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

71.     The Individual Defendants acted as controlling persons of Inovalon within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Inovalon to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Inovalon and all of its employees.  As alleged above, Inovalon is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a

COMPLAINT

Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 30, 2021            **BRODSKY SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

- 21 -

COMPLAINT